**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

Joseph Dwayne Cowles                                                                 **Plaintiff**

v.                                           **No. 4:13CV00591 JM-JTR**

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                          **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge James M. Moody, Jr.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Joseph Dwayne Cowles seeks judicial review of the denial of his application for disability insurance benefits (DIB).[3] Cowles alleges disability since April 2010, when he last worked as an insulation sales manager in Bowling Green, Kentucky. Cowles bases disability on heart problems, high blood pressure, and diabetes.[4]

**The Commissioner's decision**.  After considering the application, the ALJ identified severe impairments: coronary artery disease, diabetes, obesity, hypertension, and back disorder.[5]  The ALJ determined these impairments limit Cowles to sedentary work.[6] Because a vocational expert identified available sedentary work, the ALJ concluded that Cowles is not disabled and denied the application.[7]

After the Appeals Council denied review, the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[8] Cowles filed this

---

[3]SSA record at p. 205 (applying on July 8, 2010 and alleging disability beginning April 17, 2010).

[4]*Id*. at p. 221.

[5]*Id*. at p. 78.

[6]*Id*. at pp. 79-80.

[7]*Id*. at p. 85.

[8]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's

case to challenge the decision.[9]  This recommendation explains why the court should affirm the decision.

**Cowles's allegations**.  Cowles challenges the ALJ's evaluation of medical opinion evidence.  He says the ALJ should have credited reported limitations in manipulation and sitting.  He contends the Commissioner failed to meet her burden to show work exists that he can do, because the vocational expert identified work in Kentucky rather than Missouri.  For these reasons, he maintains substantial evidence does not support the ALJ's decision.[10]

**Applicable legal principles**.  When reviewing a decision denying an application for DIB, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11]  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Cowles can do

---

appeal procedure permits claimants to appeal only final decisions).

[9]Docket entry # 1.

[10]Docket entry # 15.

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

some sedentary work and that work exists that Cowles can do.[12]

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[13] The ALJ placed the following requirements on sedentary work: (1) occasional climbing, stooping, kneeling, crouching, and crawling;[14] and (2) occasional temperature extremes.  The court must determine whether a reasonable mind will accept the evidence as adequate to show Cowles can work within these limitations. A reasonable mind will accept the evidence as adequate for the following reasons:

---

[12]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[13]20 C.F.R. § 404.1567(a).

[14]The limitation on postural functions doesn't really reduce the range of sedentary work because sedentary work involves mostly sitting.  SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work* ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.").

1.   **The record shows no very serious functional limitation preventing**

**sedentary work**.  Sedentary work "represents a significantly restricted range of work.

Individuals who are limited to no more than sedentary work by their medical

impairments have very serious functional limitations."[15]  Cowles has severe medical

impairments, but the medical evidence shows the impairments do not prevent

sedentary work.

A claimant must prove he is disabled with medical evidence; allegations aren't

enough to prove disability.[16]  The medical evidence includes remote treatment records

---

[15]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work.*

[16]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

showing hypertension since June 2007,[17] diabetes since February 2009,[18] and coronary artery disease requiring two coronary bypass grafts since November 2009.[19]  Despite this medical history, Cowles continued to work until April 2010.  According to his employer, Cowles took medical leave for surgery during the first two weeks of April 2010 and was terminated in June 2010 because he didn't provide a medical release for work.[20]  The record doesn't reflect an April 2010 surgery, but it shows Cowles underwent a laparoscopic appendectomy in February 2010.[21]  Whatever the reason for surgery and the need for a medical release, the failure to provide a medical release lacks probative value because Cowles did heavy work and the ALJ required sedentary work.

Soon after he applied for DIB, Cowles underwent an agency consultative physical examination.[22]  According to the examiner, Cowles can do activities involving sitting, handling objects, hearing, seeing, and speaking, but he would have

---

[17]SSA record at p. 320.

[18]*Id*. at p. 312.

[19]*Id*. at p. 371.

[20]*Id*. at p. 279.

[21]*Id*. at p. 575.

[22]*Id*. at p. 622.

difficulty with prolonged standing, moving about, lifting, and carrying objects.[23] The exam supports the decision because sedentary work involves mostly sitting, handling objects, hearing, seeing, and speaking, but little or no standing, moving about, lifting, and carrying objects. The temporal proximity of the agency exam to the alleged onset date also supports the decision, because four months after Cowles stopped working, the examiner found no serious functional limitation preventing sedentary work.

Several months after the agency exam, Cowles moved to Springfield, Missouri, to live with his daughter. He sought treatment from a medical clinic for uninsured patients. Coles sought treatment for five months. During that time, he complained about back and left leg pain.[24] Diagnostic imaging revealed mild to moderate degenerative changes in the lumbar spine,[25] but his doctor suspected diabetic neuropathy.[26] After obtaining a medical statement from a clinic doctor about the ability to work, Cowles ceased going to the clinic. Treatment records indicate that Cowles was working during that time.[27]

---

[23]*Id*. at p. 625.

[24]*Id*. at p. 705.

[25]*Id*. at p. 737 (diagnostics showed no definite neural impingement).

[26]*Id*. at p. 730 & 739.

[27]*Id* at p. 740 (just got job at convenience store working night shift) & p. 739 (started experiencing leg pain when working at new job; standing a lot). *See also id.*

After obtaining the medical statement, Cowles presented to hospital emergency rooms on several occasions and complained about chest pain.  At the first visit, he left the hospital against medical advice because he said he needed to go to Kentucky for his hearing.[28]  In actuality, he accompanied his daughter to Little Rock, Arkansas.[29] While in Arkansas, he presented to an emergency room for chest pain and learned he had had a heart attack.[30]  Diagnostic testing identified two possible coronary blockages, but a staph infection prevented further exploration.[31]  After doctors initiated antibiotics to treat the infection, Cowles reported that his daughter had died in a car accident and he needed to return to Missouri.[32]

Cowles returned to Missouri and presented to a hospital emergency room for complaints of chest pain; his daughter was with him.[33]  He had pneumonia, some fluid around the heart, and a staph infection.[34]  He was hospitalized for several days.  After

_____

at p. 716 (reflecting employer).

[28]*Id*. at p. 881.  The hearing was three weeks later.

[29]*Id*. at p. 899.

[30]*Id*.

[31]*Id*. at pp. 918-19 & 921.

[32]*Id*. at pp. 900 & 933.

[33]*Id*. at p. 900.

[34]*Id*. at pp. 788, 791, 793 & 795-96.

he was released, he underwent two weeks of intravenous antibiotics[35] and missed his hearing.

After completing the antibiotics, Cowles returned to Arkansas with his daughter.  For the next few months — up until the time of his second hearing — Cowles sought treatment from a primary care provider (PCP).[36]  Treatment records document poorly controlled diabetes.[37]  The PCP recommended a diabetes specialist, but Cowles resisted; he stated that he may stop seeing doctors.[38]

The most probative aspect of Cowles's treatment history is the lack of documented functional limitation.  The ALJ correctly observed that "there are few clinical abnormalities to support significant exertional or postural limitations,"[39] and considered it reasonable to limit exertional abilities because of the heart condition, high blood pressure, diabetes, back disorder, and obesity.[40]  The ALJ found the allegation of "no grip in his left hand" — an allegation that, if true, would probably

---

[35]*Id*. at pp. 1070, 1082, 1098, 1110, 1122, 1134, 1147, 1159, 1171, 1180, 1192, 1205, 1220, 1234 & 1247.

[36]*Id*. at pp. 1258-70.

[37]*Id*. at p. 1260.

[38]*Id*.

[39]*Id*. at p. 81.

[40]*Id*. at p. 82.

preclude sedentary work — was not credible, observing that the agency exam showed he had full grip strength in both hands.[41]   A reasonable mind will accept the lack of documented functional limitation as adequate to show Cowles can do sedentary work.

2.  **The ALJ properly evaluated medical opinion evidence**.  The ALJ must resolve differences in medical opinions in the light of objective evidence.[42]   Cowles complains about the ALJ's resolution of two medical statements, but the ALJ can accept or reject the conclusions of any medical expert to the extent the reported limitations are consistent with the record as a whole.[43]

An examining cardiologist completed the first medical statement.  Cowles saw the cardiologist to obtain a cardiac clearance for circumcision.[44]   At the exam, Cowles reported feeling well, but having a burning sensation in his heart and numbness in his legs.[45]   The cardiologist's exam was negative.  According to the cardiologist, the risk of surgery was high, but not prohibitive.[46]

---

[41]*Id.*

[42]*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

[43]*Pearsall*, 274 F.3d at 1219.

[44]SSA record at pp. 656 & 638.

[45]*Id.* at p. 638.

[46]*Id.* at p. 639.

Two weeks later, Cowles underwent circumcision.[47]   Four days after the circumcision, the cardiologist completed a medical questionnaire and reported disabling limitations.  Although Cowles reported no limitations with his hands during the cardiac exam, the cardiologist reported an inability to use the left hand and an occasional ability to use the right hand.[48]  The ALJ rejected the limitations because the reported limitations lack evidentiary support, but gave some weight to reported limitations in standing and walking.[49]   The record supports the ALJ's analysis, because no medical evidence supports limitations in reaching, grasping, and manipulation, and because heart disease and uncontrolled diabetes likely limit exertional abilities like standing and walking.

The second statement was prepared by a Missouri doctor from the uninsured clinic.  The doctor saw Cowles once.  According to the medical statement, Cowles cannot sit for more than four hours per day or use either hand or arm;[50] the associated treatment note, however, documents no limitations.[51]   The ALJ properly gave the

---

[47]*Id*. at p. 647.

[48]*Id*. at p. 659.

[49]*Id*. at p. 83.

[50]*Id*. at p. 759.

[51]*Id*. at p. 760.

statement little weight, reasoning that despite many physical exams, clinical evidence does not support reported limitations; Cowles repeatedly demonstrated intact sensation, reflexes, grip strength, and fine manipulation.[52]   The record supports the ALJ's reasons for rejecting the medical statement.   The ALJ did not err in resolving the medical opinion evidence.

3. **The ALJ satisfied the Commissioner's burden to show work exists that Cowles can do**.   If a claimant proves he can no longer do his past work, the Commissioner must determine whether work exists in the national economy that the claimant can do.[53]   To make this determination, the ALJ may consult a vocational expert.[54]

The ALJ determined that Cowles can no longer do his past work, and twice consulted a vocational expert during both hearings.   According to the second vocational expert, Cowles obtained clerical skills from former work that transfers to

---

[52]*Id*. at p. 83.

[53]20 C.F.R. § 404.1520(a)(4); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

[54]*Stewart v. Shalala*, 957 F.2d 581, 586 (8th Cir. 1992) (explaining that where "the claimant has a nonexertional impairment…the [Commissioner] must use vocational expert testimony or other similar evidence to meet the burden of showing the existence of jobs in the national economy that the claimant is capable of performing").

work as an information clerk and file clerk.[55]  The vocational expert also identified

other work that a person with Cowles's limitations can do: order clerk, new accounts

clerk, and surveillance system monitor.[56]  The vocational expert provided estimated

job numbers for Kentucky and Bowling Green, Kentucky.

Cowles contends the vocational evidence is insufficient to satisfy the

Commissioner's burden because he lived in Missouri at the time of his hearing and the

VE provided testimony about available jobs in the Bowling Green, Kentucky area.[57]

Agency guidance directs the ALJ to "cite examples of occupations or jobs the

individual can do and provide a statement of the incidence of such work in the region

where the individual resides *or* in several regions of the country."[58]  The ALJ cited

examples of jobs Cowles can do and provided a statement about the availability of the

exemplary work in the national economy, Kentucky, and the Bowling Green region.

Even if Cowles did not reside there at the time of the hearing or the decision, the

vocational evidence identified exemplary jobs and availability for other regions and

---

[55]SSA record at p. 23.

[56]*Id*. at p. 22.

[57]At the administrative hearing, Cowles consented to Bowling Green as the venue for his claim. *Id*. at p. 14.

[58]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work* (emphasis added).

the national economy, which was sufficient to satisfy the Commissioner's burden.

To the extent he complains that the first vocational expert identified no transferrable skills, the ALJ didn't ask about transferrable skills. The probative aspect of the first vocational expert's testimony is that the first vocational expert, like the second vocational expert, identified available sedentary work.[59] The availability of sedentary work shows works exists that Cowles can do, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[60]

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Cowles's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[59]SSA record at p. 46 (identifying table worker, stuffer, and patcher as available sedentary work).

[60]42 U.S.C. § 1382c(a)(3)(B).

Dated this 28th day of December, 2015.

_____
United States Magistrate Judge